**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| REBECCA G. HUTCHERSON,<br><br>          Plaintiff,<br><br>vs.<br><br>ARIZONA HEALTH CARE COST CONTAINMENT SYSTEM ADMINISTRATION; THOMAS J. BETLACH, in his capacity as director of AHCCCS,<br><br>          Defendants. | No. CV 09-898-PHX-JAT<br><br>**ORDER** |

Pending before the Court are cross motions for summary judgment. The issue in this case is whether Plaintiff or Defendants should be the recipient of the proceeds from an annuity.

**I.      Factual Background**

Plaintiff is the daughter of John and Betty Hutcherson. At some point, Betty Hutcherson became incapacitated and had to be institutionalized. In order for Betty to qualify for Medicaid, John and Betty had to spend down their assets to under $103,641.[1]

---

[1] Both parties agree that the asset limitation is $103,640; however, neither party has cited a source for this figure. Further, the Court has reviewed the Arizona Administrative Code, AZ ADC R9-28-401 through AZ ADC R9-28-410, and cannot locate an amount which causes a couple to be ineligible for coverage. However, the Court has verified that this is the

1 Specifically, Betty sought to be covered by the Medicare Catastrophic Coverage Act of 1988

2 ("MCCA"), 42 U.S.C. § 1396 (2003 & Supp. 2009) *et seq*, as administered by the Arizona

3 Long-Term Care System ("ALTCS"), a division of the Arizona Health Care Cost

4 Containment System ("AHCCCS").[2]  The MCCA has some exceptions to the spend down

5 requirement to prevent the total impoverishment of the community property spouse.  *See*

6 Doc. #31 at 2 (*quoting* H.R. Rep. No. 100-105, pt.2, p. 65); *see also* 42 U.S.C. § 1396r-5(d)

7 (Supp. 2009).

8    In this case, neither party disputes that John Hutcherson purchased an annuity that

9 qualified within the exceptions to the spend down requirements.  To qualify as an exception,

10 the annuity had to comply with 42 U.S.C. § 1396p(c)(1)(F) (Supp. 2009).  Specifically, on

11 June 30, 2007, Mr. Hutcherson, as the owner and as the annuitant, purchased the annuity for

12 $100,000.  The annuity was to pay a fixed monthly amount of $2,781.63 for 36 months.  Mr.

13 Hutcherson died before the end of the annuity contract.  At the time of Mr. Hutcherson's

14 death, there was approximately $75,000 left in the annuity.  The beneficiary of the annuity

15 is listed as AHCCCS pursuant to 42 U.S.C. § 1396p(c)(1)(F); then Rebecca Hutcherson is

16

17 ───────────────

18 correct limitation for Wisconsin, so the Court has presumed it is correct limitation for
19 Arizona. *See* http://dha.state.wi.us/home/Decisions/MAResourceAllocation/2007/83735.pdf
   at 2.

20
21    [2] In a case discussed at length below, the Ninth Circuit Court of Appeals summarized
   this system as follows:

22       Medicaid is a cooperative federal-state program established in 1965 as Title
         XIX of the Social Security Act (the Act), 79 Stat. 343, as amended, codified
23       at 42 U.S.C. § 1396 et seq., to provide federal financial assistance to states that
         elected to reimburse specified costs of medical treatment for needy individuals.
24       Participating states must each develop a plan containing reasonable standards
         for determining eligibility for and the extent of medical assistance. State plans
25       must comply with the requirements imposed by the Act and the implementing
         regulations. ... An applicant is entitled to Medicaid if he or she satisfies the
26       eligibility criteria established by the applicant's state.
27 *Lewis v. Hegstrom*, 767 F.2d 1371, 1373 (9th Cir. 1985) (internal citations and quotations
28 omitted).

1   listed as the beneficiary. Doc. #29, Ex. A at 1.[3]  Under the annuity contract, at the time of

2   the annuitant's death, "The death benefit may be paid in the form of a lump sum or the

3   remaining guaranteed annuity payments, as scheduled, instead of a lump sum." Doc. #29,

4   Ex. A at 13.

5       The parties agree that as of the time of Mr. Hutcherson's death, AHCCCS had spent

6   $23,840.51 on Betty Hutcherson's care. The parties dispute whether Betty is still receiving

7   benefits from the ALTCS. *Compare* Doc. #27 at ¶3 *with* Doc. #29 at ¶3. Plaintiff's

8   complaint asks for this Court to declare that AHCCCS is not entitled to any of the remaining

9   $75,000 in the annuity; alternatively, Plaintiff's complaint asks this Court to declare that

10  AHCCCS is entitled to only the $23,840.51 it has spent on Betty's care as of the date of

11  John's death. Doc. #1 at 4, lines 13-17. Conversely, Defendants claim that AHCCCS is

12  entitled to the monthly annuity payments following John's death. Doc. #29; Ex. C at 1.[4]

13      On this record, the Court believes the annuity company is still making payments to

14  AHCCCS; however, neither party has confirmed or denied whether that is true. Once

15  AHCCCS began receiving the monthly annuity payment ($2,781.63),[5] Defendants applied

16  $2,552.92 to Betty's monthly care, and applied the remaining $228.71 monthly to the

17  outstanding $23,840.51 it had spent on Betty's care prior to John's death. Doc. #29 at 3, ¶4.

18  Because the parties dispute whether after December 2009 Betty was still receiving ALTCS

19  benefits, the Court is unclear whether this payment distribution continues as of today.

20

21

22      [3] Counsel for Plaintiff is advised that in the future they should comply with the
    Administrative Policies and Procedures Manual governing electronic filing and redact all
23  social security numbers from any publicly filed document.

24      [4] The company at least twice attempted to pay the lump sum death benefit of
25  $64,393.83 to AHCCCS. Doc. #29, Ex. B at 1-4. For reasons unknown to the Court,
    AHCCCS refused to accept the lump sum and insisted on receiving the monthly annuity
26  payment. Doc. #29, Ex. B at 1.

27      [5] Defendant began receiving the monthly payment in approximately June 2008. Doc.
28  #29, Ex. B. at 1.

1   *Compare* Doc. #27 at ¶3 *with* Doc. #29 at ¶3. Both parties have moved for summary

2   judgment on the issue of who is the proper payee of this annuity and in what amount.

3   **II.   Summary Judgment Standard**

4           Summary judgment is appropriate when "the pleadings, depositions, answers to

5   interrogatories, and admissions on file, together with affidavits, if any, show that there is no

6   genuine issue as to any material fact and that the moving party is entitled to summary

7   judgment as a matter of law." Fed. R. Civ. P. 56(c). Both parties to this case agree that there

8   are no disputed issues of material fact that would preclude summary judgment.

9   **III.   Merits**

10           In her complaint, Plaintiff asks this Court to declare that 42 U.S.C. § 1396p(c)(1)(F)

11   was not properly amended by Congress; therefore, it is unenforceable, which results in

12   Plaintiff receiving the full approximately $75,000 left in the annuity as of John's death.

13   Alternatively, Plaintiff asks this Court to declare that AHCCCS's recovery from this annuity

14   is limited to the amounts paid for the benefit of Betty as of the date of John's death,

15   $23,840.51; thus, the remaining approximately $40,000 should be paid to Plaintiff.

16           **A. Validity of 42 U.S.C. § 1396p(c)(1)(F)**

17           Plaintiff's argument for why she is entitled to the full amount of the annuity is that

18   2006 amendment to 42 U.S.C. § 1396p(c)(1)(F) was invalid. In particular, Plaintiff argues

19   that although Congress characterized the amendment as a "technical" amendment and made

20   the amendment retroactive, really the amendment was substantive, and a substantive

21   amendment cannot be retroactively applied.

22           Plaintiff summarizes the amendment as follows:

23           Prior to 2006, 42 U.S.C. § 1396p(c)(1)(F)(i) stated that the State must be
"named as the remainder beneficiary in the first position for at least the total

24           amount of medical assistance paid on behalf of the *annuitant*" for annuities
purchased under the subsection. ... After the 2006 Amendment, the statute

25           now states that the State must be the beneficiary for assistance paid for the
"institutionalized individual."

26

Doc. #28 at 2.

27

28

1    For purposes of this case, this amendment to the statute is significant. AHCCCS

2    never paid any benefits for the "annuitant," John Hutcherson; but has paid significant

3    benefits for the "institutionalized individual," Betty Hutcherson. Plaintiff argues that this

4    Court should interpret the statute as limiting AHCCS's recovery from the annuity to amounts

5    paid for the "annuitant," *i.e.* zero.

6    Defendants do not dispute the date of the amendment nor the fact of the amendment.

7    However, Defendants argue that, for purposes of this case, whether the amendment was

8    technical or substantive does not matter. Doc. #30 at 8. The Court agrees.

9    Specifically, as Defendants point out, the annuity at issue in this case was

10    undisputedly purchased in 2007, after the 2006 amendment. Thus, this amendment is not

11    being applied to Plaintiff retroactively. Accordingly, Plaintiff's cases are all inapposite in

12    that they hold that a technical amendment cannot be applied retroactively. *See Landgraf v.*

13    *USI Film Prods.*, 511 U.S. 244, 265-66 (1994) (noting that the Court is applying the

14    substantive law to conduct at the time the conduct took place); *Jones v. R.R. Donnelley &*

15    *Sons., Co.*, 541 U.S. 369, 380-83 (2004) (interpreting an amendment). However, it is

16    undisputed that Congress can change a law substantively and apply it prospectively.

17    Therefore, assuming Plaintiff is correct that this amendment was in fact a substantive

18    amendment, Plaintiff is nonetheless bound by it.

19    In declining to decide whether this amendment was technical or substantive, this Court

20    notes that it should not decide an issue that is not necessary to resolve the case. 21 C.J.S.

21    *Courts* § 189 (2009) ("Courts will only decide necessary questions, and will rely on the

22    narrowest legal grounds available"). Moreover, in this case, deciding whether this

23    amendment was technical or substantive would be an advisory opinion. The Court

24    specifically rejects Plaintiff's conclusion that if the Court finds this amendment to be

25    substantive, "The Court should not give substantive effect to an amendment Congress has

26    designated as a technical amendment." Doc. #28 at 9. This Court must enforce the laws

27    enacted by Congress unless such laws are unconstitutional. *See McNeil v. U.S.*, 78 Fed.Cl.

28    211, 219 (2007) ("There is no question that Congress has provided that the United States

Code is prima facie evidence of the laws of the United States,...and that these laws are applicable in the courts of the United States."); *see also Landgraf*, 511 U.S at 267-68 (noting that only the Constitution's restrictions would be reason for a court failing to give a statute its intended scope). Plaintiff makes no argument that this law, as applied to her, is unconstitutional. Therefore, it is binding on her. As Plaintiff will note, in the cases she cited the courts provided relief to parties who were subject to a retroactive application of a substantive change in the law *because* such retroactive application violated the party's due process rights in violation of the constitution. Again, no retroactive application has occurred in this case; therefore, the law, even if the amendment was substantive, is binding on Plaintiff. Accordingly, Plaintiff's request for declaratory relief on this basis is denied, and summary judgment will be granted to Defendants.[6]

### B.     Meaning of "paid"

Alternatively, Plaintiff asks this Court to declare that AHCCCS can receive from the annuity only amounts it had "paid" on behalf of Betty Hutcherson at the time of John Hutcherson's death. As discussed above, to qualify for the ALTCS program, Betty Hutcherson and John Hutcherson had to have total assets of less than $103,641. Under the qualification rules, Betty could have been denied benefits if, while trying to reduce their assets to the $103,640 level, the couple disposed of an asset for less than fair market value. *See generally Lewis v. Hegstrom*, 767 F.2d 1371, 1376 (9th Cir. 1985). 42 U.S.C. § 1396p(c)(1)(F) provides:

---

[6] The Court notes that Plaintiff appears to argue that this Court should interpret the words "institutionalized individual" to mean "annuitant" because otherwise Plaintiff argues that the amendment must have been substantive, which is inconsistent with Congress's stated intent that the amendment be technical. As a matter of statutory construction, when there is no ambiguity in the words used — "institutionalized individual" — the Court will not rewrite the statute to say something it does not say in order to make the amendment a "technical" one. Again, the Court is not deciding whether the amendment is technical or substantive; but, accepting Plaintiff's argument that interpreting institutionalized individual to mean institutionalized individual causes that the amendment is substantive; then, for purposes of this Order, the Court will assume the amendment is substantive. The Court will not, as Plaintiff suggests, interpret the words "institutionalize individual" to mean "annuitant."

> For purposes of this paragraph, the purchase of an annuity shall be treated as disposal of an asset for less than fair market value unless —
>> (i) the State is named as the remainder beneficiary in the first position for at least the total amount of medical assistance paid on behalf of the institutionalized individual under this subchapter.

Plaintiff argues that "paid" as used in this section should be read to mean paid by the state as of the date of the annuitant's death, precluding recovery for the state for any amounts spent on the institutionalized individual after the annuitant's death. Defendants argue that "paid" means any amounts paid for the care of the institutionalized individual regardless of whether the state provides that care before or after the death of the annuitant.

Both parties have moved for summary judgment on this issue of statutory construction. Neither party in the cross-motions, responses, or replies cites a single case; no cases on statutory construction and no cases on either this particular section of the code, or analogous sections of the code. Based on the Court's research, the Court must first consider whether the statute is ambiguous.

> The purpose of statutory construction is to discern the intent of Congress in enacting a particular statute. Our search for Congress's intent begins with the plain meaning of the language in question. If the relevant language is plain and unambiguous, out task is complete. To discern the text's plain meaning, words will be interpreted as taking their ordinary, contemporary, common meaning.

*Cooper v. F.A.A.* 596 F.3d 538, 544 (9th Cir. 2010) (internal citations and quotations omitted). Additionally, a "cardinal principal of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001)(internal quotations omitted).

In an analogous case, the Ninth Circuit Court of Appeals had to determine the meaning of the word "payable" in the context of eligibility for Medicaid assistance when an individuals transferred their homes for less than fair market value within 24 months prior to applying for benefits. *See Lewis*, 767 F.2d at 1376. At issue in that case was a provision that stated that an applicant would be ineligible for Medicaid assistance for 24 months after the

1 transfer of the home, "except that, in the case where the uncompensated value of the home

2 is less than the average amount payable under the State plan as medical assistance for 24

3 months of care in a skilled nursing facility, the period of ineligibility shall be such shorter

4 time as bears a reasonable relationship (*based upon the average amount payable under the*

5 *State plan as medical assistance for care in a skilled nursing facility*) to the uncompensated

6 value of the home." *Id.* at 1374, n.2 (internal quotations omitted).

7       In *Lewis*, the definition of "payable" was particularly relevant because the amount

8 "payable" to the skilled nursing facility from the state was $1,000; but the amount "payable"

9 to the skilled nursing facility from all sources, including the applicant himself or herself, was

10 $1,350. *Id*. at 1373. The state argued that "payable" included only amounts payable by the

11 state; the applicant argued that "payable" included amounts payable from any source. *Id.* at

12 1375.[7]

13       The *Lewis* court went on to note that a court should first look to the plain language of

14 the statute. *Id.* at 1376. The Court concluded that the definition of "payable" could not be

15 determined based on the plain language of the statute. *Id.*

16       In this case, this Court must determine whether the meaning of "paid" is obvious

17 based on the plain language of the statute. Given the context of the word "paid" in this case,

18 specifically in the section of the statute requiring that the state be the remainder beneficiary

19 of the annuity, it seems to this Court that "paid" means any amounts paid by the state for the

20 benefit of the institutionalized individual over the life of the institutionalized individual. To

21 find any other interpretation, the statute would have had to have limiting language (for

22 example, it could have said "paid *as of the date of the death of the annuitant*"). Because the

23 statute had no limiting language, the word "paid" clearly includes all amounts paid without

24 any limitations.

25

26      [7] The Court highlighted this distinction noting, "For example, the transfer of a home
27 for $27,000 less than fair market value would result in 27 months of ineligibility, under
Oregon's interpretation..., but only 20 months of ineligibility if plaintiff...is correct." *Lewis*,
28 767 F.2d at 1375.

1    Thus, the Court finds the language of the statute to be clear in its plain meaning.

2    However, the Court notes the in *Lewis*, the Court of Appeals found that when a court must

3    consider the context of the word, the meaning is not plain. *Id.* Further, both party's advocate

4    meanings of "paid" that this Court cannot say are wholly unreasonable. Accordingly,

5    alternatively, the Court will continue with the analysis of the statute as if the Court had

6    concluded the meaning of "paid" was ambiguous. As the *Lewis* court notes:

7          If the language of the statute is ambiguous, we then look to the congressional
      intent. We must not hinge our interpretation of a statute upon a single word

8          or phrase but rather look to the statute as a whole, as well as its object and
      policies. Further, in construing a statute we are duty bound to consider time

9          and circumstances surrounding the enactment as well as the object to be
      accomplished by it.

10

11   *Id.* (internal citations and quotations omitted).

12   So, the Court now turns to the legislative history. As discussed above, the parties

13   cited nothing in this section of their briefs, so obviously they did not cite any legislative

14   history. In discussing her first argument, Plaintiff states that there is virtually no legislative

15   history for the 2006 amendment to this section. Doc. #28 at 4. Defendants cite some

16   legislative history in the first section of their brief. Doc. #30 at 6. In discussing the purposes

17   of the 2006 Medicaid amendments, a New Jersey court noted:

18         By enactment of the [2006 amendments], Congress undertook to close
      loopholes in the federal statutory provisions governing the Medicaid program

19         that had allowed individuals with sufficient assets to pay for their own medical
      care to qualify for Medicaid... . In his statement in support of this proposed

20         law, Senator Grassley, the chairman of the Senate Finance Committee, stated
      that the [2006 amendments] "close[] loopholes in current Medicaid law

21         concerning transfer of assets to limit the circumstances under which persons
      may intentionally shelter assets in order to qualify for Medicaid." 151 *Cong.*

22         *Rec.* S12071. In the house hearing on the proposed law, Representative Cantor
      stated that the [2006 amendments] would allow the government "to root out

23         the asset transfer fraud that is going on with many in this country, which
      essentially allows those who could otherwise afford to pay for their health care

24         services to become wards of the State." 152 *Cong. Rec.* H9550. Similarly,
      another Congressman, Representative Joseph Barton of Texas, stated that

25         enactment of the [2006 amendments] would "make it more difficult to hide
      assets so that wealthy clients can pretend to be poor to qualify for long-term

26         Medicaid coverage in nursing homes."

27   *N.M. v. Division of Medical Assistance and Health Services*, 964 A.2d 822, 827-28

28   (N.J.Super.A.D. 2009). Additionally, Defendants point out that in the 2006 amendments,

- 9 -

1    Congress was concerned about differentiating between annuities "that are validly purchased
2    as part of a retirement plan from those that abusively shelter assets."   Doc. #30 at 6
3    (*quoting* H.R. Conf. Rep. 109-362, H.R. Conf, Rep. No. 362, 109th Cong., 1ST Sess. 2005,
4    2005 WL 3568455, * 272, 2006 U.S.C.C.A.N. 3 (Leg. Hist.)).

5              The Court find this legislative history to be consistent with the Court's interpretation
6    of the plain language of the statute.   Considering the statute, with its amendments, as a
7    whole, Congress was attempting to prevent people from "sheltering" assets and going on
8    state aid.   Plaintiff's proposed construction would thwart this very policy.

9              In particular, in allowing the non-institutionalized community spouse to have some
10   money during his lifetime, Congress required that the remainder beneficiary be named as the
11   state.   *See* 42 U.S.C. § 1396p(c)(1)(F).   It would be inconsistent with the purpose of the
12   statute as a whole to allow an annuitant to purchase an annuity as a spend down, die the next
13   day, cap the state's recovery at the cost to care for the institutionalized individual at the one-
14   day he or she qualified for care post-spend down, allow the heirs to receive the rest of the
15   annuity and require the state to pay for the institutionalized individual for the rest of his or
16   her life.   The purpose of the statute appears clear that if the non-institutionalized spouse does
17   not out live the annuity contract, the state, as the remainder beneficiary, will receive the rest
18   of the annuity to care for the institutionalized individual, for at least the amount the state paid
19   at any time.   To interpret the statute any other way would render the requirement that the
20   state be named as a remainder beneficiary superfluous in many hypothetical circumstances
21   where the annuitant died early in the annuity contract; and such a result is inconsistent with
22   the principles of statutory construction.   Accordingly, Defendants' motion for summary
23   judgment on this theory will also be granted.

24   **IV.    Conclusion**

25             As discussed above, the Court will grant Defendants' motion for summary judgment
26   on both of Plaintiff's claims for declaratory relief in the complaint.   However, as also
27   discussed above, the Court cannot determine on this record whether Betty Hutcherson is still
28   receiving benefits and, if not, whether, at the time she stopped receiving benefits, there was

- 10 -

1    any money left in the annuity. Accordingly, the Court will require Defendants to submit a

2    proposed form of judgment detailing how much of the annuity is to be paid to AHCCCS, and

3    how much of the remainder of the annuity, if any, is to be paid to Plaintiff. Therefore,

4    **IT IS ORDERED** that Defendants' motion for summary judgment (Doc. #27) is

5    granted; Plaintiff's motion for summary judgment (Doc. #28) is denied.

6    **IT IS FURTHER ORDERED** that Defendants shall submit a proposed form of

7    judgment (by filing a notice of submitting a proposed form of judgment in the Court's

8    electronic filing system and by emailing in word or wordperfect a proposed form of judgment

9    to chambers) within ten days of the date of this Order; Plaintiff may object to the proposed

10    form of judgment within ten days of when it is submitted; if Plaintiff objects, Defendants

11    may reply to the objection within five days of when the objection is filed.

12    DATED this 13th day of May, 2010.

_____
James A. Teilborg
United States District Judge